Excuse number 06-1365, LB Plastics Incorporated, Mr. Merrill, Mr. Jacobs. Good morning, may it please the court. This is a patent infringement case that presents a single issue of infringement. And that is whether a continuous line of hot melt adhesive can be either covered by or equivalent to a claim term that says heat welding and that forms a continuous line. Now the district court in this case ran a summary judgment that there was no infringement. And it's our position that the court made several mistakes. First on literal infringement and unnecessarily construing the claim term, heat welding too narrowly. I'd like to leave that for my brief and address the doctrinal equivalence that I made this morning, because I think that's the more important issue. In this case, the district court made two fundamental errors on the doctrinal equivalence. First, on the question of factual equivalency. The court did not discuss whether or not there were any disputed issues of material fact. The factual equivalency, whether this hot melt adhesive could be equivalent to heat welding, was a disputed factual issue. LB Plastics put in testimony from the inventor, Mr. Harry Davis, in the form of an affidavit that explained why the two could be factually equivalent. The judge found, as a matter of fact, that the function weight result test was not met. And that was improper on summary judgment. You've got a prior art Crosby package out there that is doing exactly the same thing except welding in dots. The only thing that you're adding is saying, well, we'll prevent any leaves from slipping under the gaps in those dots by re-welding continuously, right? That's right. Now, besides the fact that there's no way this is going to pass an obviousness examination down the line, which isn't before us. How can that not be, given the prior art context, how can that be distinguished from Crosby sufficiently to give you an infringement rule? Why isn't the prior art here a preclusion on you? There's nothing in the prior art that shows a continuous attachment line, whether it's a weld or glue. And that was the limitation that was added during prosecution that the examiner found sufficient to distinguish the Crosby prior art. But you have in the Crosby prior art and in the Pace prior art a disclosure of use of glue. That's true. In this area. There is a, for this purpose. And there is a statement in the, in the patent, yes, criticizing the previous attachment needs. Yes. So, I wonder whether we've addressed this question in any of our cases. In other words, here is, here you have somebody citing prior art, which uses a different attachment method, that is gluing instead of welding. Right? And under Johnson & Johnson, is, is that dedication to the public to fail to, to, to claim that when you're citing this prior art? Do we ever address that? Well, the disclosure dedication rule has been discussed. What I have to, but, but, is the disclosure dedication rule addressed in the context of somebody citing prior art patents, which show a different mechanism or means for doing something, and then they don't claim that in the patent. So you have here a couple of prior art patents that, that disclose gluing. The patentee here didn't choose gluing. And is that a foreclosure under the disclosure dedication rule? Do we ever address that? I don't know that that specific factual situation has been addressed. The court's cases have said that for there to be a dedication, the subject matter that is being dedicated must be specifically disclosed in the patent. And I don't think a general reference to prior art attachment means, is that specific disclosure, so that someone could read that. But it's so clear what in this art field, we're, we're not talking about rocket science here. This is pretty clear that what the prior art is, and the distinction is very clear, you didn't claim it. Why isn't Judge Dike entirely on the right track? There is some wish, you didn't claim it. That's true, Your Honor. If, if the court were to follow that path, there would be essentially no doctrinal equivalence available in this case. And I don't think the court's precedent or any legal principle requires that. That just because something is foreseeable at the time of the application, that the doctrinal equivalence is foreclosed for all time. Well, this is not quite the same thing as saying it's foreseeable. It's, it's, it's a method of attachment which was specifically disclosed in prior art, referenced in the patent. It's not that this rule would not go quite so far as to say that anything foreseeable can't be claimed. But it's a question of how far this disclosure dedication will go. Well, Your Honor, I, I disagree with the premise that what is claimed was disclosed in the prior art. Gluing and adhesives were disclosed, but not in a continuous line. There's nothing in the prior art that has the end to end attachment of the screen or the mesh to the plastic art. There was spot welding. There's a general disclosure of adhesives. But that specific limitation, which in that portion of the specification. My picture of the problem just completely suggests that the the wisdom of sealing your, your thing down wherever it might be is something, why doesn't just the nature of the problem deal with that? Why isn't it practically disclosed by, by the art form? Well, it, Your Honor, I can't tell you why it's not. But it is a bit of prior art. What the prior art discloses is various other mechanisms, such as spot welding. The prior art's to be interpreted from the vantage point of one of ordinary skill in that art, right? Wouldn't one of ordinary skill in the art interpret in a way that would make it work? And you want to keep leaves from getting under the edges there and, and ruining the, the mesh, the function of the mesh. That could be the recognition of the problem, could be part of the, the question here that goes to obviousness, which I think the court has recognized is not before the court. The Cosby patent disclosed spot welding every 12 inches. It was distinguished by a continuous attachment. You're right that the, that obviousness isn't before the court. The doctrine of equivalence is, but are we going to foster an equivalent which would be so clearly invalid? Are we going to expand, this is almost equivalent to the Wilson's sporting goods analysis. Are we going to allow you to expand the, the exclusive right here to encompass something that would be clearly within the, the envisioning capability of one's skill in the art? I know your honor, I don't think that is the case. Because the continuous line, the continuous uninterrupted line, is not shown in the prior art. Whether it is. Because it's not necessary to be shown in the prior art. Anybody knowing that you want this, the mesh to work would say, you put your Cosby dots, spot welds close enough together to ensure that nothing slips under the edges. And if you get them close enough together, they become almost a continuous line. It's, isn't this within the knowledge of one's skill in the art? With all due respect, your honor, I think you're still going back to the obviousness question. But, in the context of the doctrine of equivalence, I'm suggesting that we perhaps will not allow you to expand your equivalence to encompass something which would be clearly within the knowledge of one's skill in the art. Those are the supporting things. I understand that. But by focusing on whether or not continuous attachment across the length of the screen was not, was something that was or wasn't in the prior art, that doesn't have anything to do with whether gluing and heat welding are equivalent. That's a different issue. You may believe that attaching it by heat welding or gluing was an obvious way to do it. But that doesn't affect the question. Is the hot-mold adhesive equivalent to heat welding in this context? And whether or not it's interrelated. That gets us back to the claim construction. And there you've got the patent disclosing welding, heat welding, nothing about adhesive. That's true. Yes. In which case, that takes us back to a comment you made about foreseeability. Yes, Your Honor. Which caught my ear. Because, as you know, the Supreme Court has made some statements about foreseeability which are rather rigorous. They have. And the reason I brought it up also is because the District Court's opinion also refers to foreseeability, although it gets it in the wrong category. It cites the Chimanata case, which clearly doesn't apply here. And the Supreme Court's statement on foreseeability, I think this Court has recognized, is in the context of a narrowing amendment. And that if something is unforeseeable, that can rebut the presumption of an estoppel by a narrowing amendment. But that's not the same thing as saying anything that is foreseeable cannot be covered by the doctrine of equivalence. I know this Court has cases that suggest that foreseeability can be used in the analysis, like SAGE products, which I think was cited in Federal Rules Brief. Those, as I read them, are all-elements rule cases, where foreseeability is used to look at the structure of the claim, not whether gluing and heat welding an element could be one-for-one equivalent. But if we take that to our logical extreme, that any time two elements could be foreseeably equivalent, I think you run snapping to Hilton-Davis, for example, or other cases of this Court that say just because something was known in the prior art doesn't mean that it can't be encompassed by the doctrine of equivalence. We'd have essentially nothing left of the doctrine of equivalence if we took it metaphorically. No, no, that's not true. Doctrine of equivalence would then have its, perhaps, one significant purpose of protecting against after-rising technology. That would be left, Your Honor. But I don't think that with Warner-Championson talking about non-interchangeable equivalence, that that part of it, which goes back to greater Tang, and which has been the root of the doctrine, would be eliminated. There would be the narrow exception where you'd have to develop technology. But as I understand this Court's opinions, the Court has said that just because something is known in the prior art doesn't mean that it can't be covered as an equivalent element or element. There's no all-elements test problem here. There is something that is there in the equivalent. There's no doubt that the hot-melt adhesive functions in the same way as the heat-weld. It's not like structural limitations have been eliminated. It still goes end-to-end in a continuous line. So the various doctrines, the limited doctrines of equivalence here, I don't think apply. I think it's a simple factual question that should have been left to the jury and not decided on its own. Was there any debate before the trial, Judge, about the nature of the adhesive and whether, in fact, there were after-acquired technologies and improved adhesives that facilitated the defendant's activity? I don't believe there's any evidence of this being an after-developed technology. Hot-melt adhesive, I believe, was available at the time the application was filed. I don't think there's any dispute that adhesives were known. And your patent was clearly, explicitly invoking only the hot welding, right? That's the claim construction concern. First of all, that's what it talks about continually throughout, right? You don't argue at any point that your patent covers adhesives? Well, Your Honor, I do have an argument that the claim construction of a heat weld limited to melting the two pieces of plastic together is unnecessarily restrictive to the preferred environment. The specification does disclose ultrasonic welding and heat welding. But as you get into the declarations... It comes back to those points. It does not mention adhesives. Adhesives are not disclosed, and I think that also goes to the disclosure dedications. As a matter of fact, they say those prior art adhesives are off the table. Not exactly, no. It says the prior art attachment means that don't run continuously end-to-end or off the table. Not adhesives. Adhesives are not... What's that? I say it depends how you read it. Well, in the specification, you can read it as saying that the prior attachment means i.e. adhesives don't work. Well, Your Honor, I don't see that in the specification. But it's very clear here that what you're trying to do under the doctrine of equivalence is capture something that was readily apparent, not claimed, not disclosed. In fact, you diminished its importance with your prior art comment and instead focused on ultrasonic and heat welding. So you're trying now to do something which your whole patent was directed against, right? I don't think that's a fair read of it. You don't think that's a fair read? I say that that's what the whole patent was directed to. That it was directed specifically to heat welding, to the exclusion of all other techniques. The limitation that was added and the prior art was distinguished on the basis of having a continuous end-to-end heat weld. There's nothing that says heat welding is better than gluing, for example. Can I say one other thing? This is direct to both you and your opposing counsel. You have marked so much stuff as confidential in these briefs, the public version becomes largely incomprehensible. And it seems to me, I went through it fairly carefully, that you go way beyond what could possibly be claimed as confidential. This is a problem which comes up a lot of these times with these confidential briefs, that the two counsel are generous with each other in marking stuff. You end up with the public being denied a brief in which it tells them what's going on. Your Honor, I recognize that. I apologize. I do believe that things were over-marked as confidential. I didn't get involved in the case until the reply brief was filed. I apologize for that. We would like to request both sides to review what's been marked confidential. Just take a copy, yellow highlight or whatever, to make clear what needs to be preserved in an opinion that we might write. Thank you, Your Honor. We'd like to do that. Judge, I completely understand. Thank you, Mr. Jacobs. Thank you. Mr. Marriott. May it please the Court, I'm David Ray. I represent the Attorneys. I'd like to start out by addressing some issues that were raised here in Mr. Jacobs' argument. On the issue of the confidentiality of the designations briefly, the only thing that my client wanted to mark confidential was certain aspects of its manufacturing process. Everything else that we marked confidential in our brief were things that were designated confidential, either by helping tax things or by a third party. Whatever the source, we try to try to respect what's under a protective order or whatever other reason. If we find something that's critical to our decision, we'll be in touch. So are you saying then that you are waiving a claim to confidentiality other than what the other side requests? Your Honor, the only thing we want to keep confidential is certain aspects of the exact manufacturing process. Okay. Well then, would you go back through your brief and anything in the appendix and highlight that which you are retaining confidential so we'll know? I'll be glad to do that, Your Honor. Okay. Now let's start the clock again. Thank you, Your Honor. I'd like to start out by addressing some issues that were raised during the closing counsel's argument. The question was posed in the context of the disclosure dedication rule. Are there any cases that said that when there is a reference to the prior article dedicated to the prior article of the disclosure dedication rule, we look for such a case? We did not find one. So I have to appear before you today and say that to our knowledge, there is not such a case. However, let's look at this in practical terms. You have a specification that specifically refers to ultrasonic or heat welding along the entire length of the gutter guard. Not just continuous attachment. It refers to ultrasonic or heat welding. And then it criticizes what it calls the attachment means using other prior article gutter guards. Now if a person of ordinary skilled yard is reading it, what is she going to do? She's going to look at the prior article inside of the PET. And one of our PETs that's going to be looked at is Cosby, which specifically discloses what they call attachment means. And they disclose three. Mechanical clips, adhesives, and heat welding. And why is that person of ordinary skilled yard not going to think that that's been dedicated to the public or phrasing it somewhat alternatively, that it's been disavowed? I realize that these are slightly different arguments, but they both go to the same thing. The patent is disclosing something. The patent is telling the public something. But such references were not cited by the examiner. So how will we know that? How will we know that you're telling us that it was old news to attach a gutter guard? Your Honor, the specification itself tells us that these two things can be attached using adhesive. It wasn't a member of the patent examiner telling us. The prior article was cited as prior to the patent. You're really saying that unsighted references that are related to the invention, one way or another, perhaps because of the activities of the accused infringer, need to be given the same treatment as an explicit disclaimer after citation, which was the subject matter pressed over in the cases on the previous. You want to think it should be? Yes. In the context of this case, yes, Your Honor. But I will also tell you this. It is not the absolute number one argument that we have. I think we have better arguments than that, although I do think that that argument can be made. I do not need to depend on that argument for us to win our case. You almost have to, don't you, if you say there's no access to deductive equivalence? No, Your Honor, I don't think so, and I will tell you why. In our brief, as you know, we cited quite a bit of testimony by the patent examiner that he actually experimented with precisely the same technique that we use to make our gutter float. And I asked him repeatedly in his deposition, why did you decide to weld instead of using the adhesive that you had experimented with? And he answered the question repeatedly in terms of the superiority of welding. And he was only too happy to give us all the reasons why he thought that welding was superior to gluing. He named the reasons. He then told us that those weren't even all the reasons. And one of the reasons was that it was a stronger bond. What's the significance of that? Well, it's significant in several ways, Your Honor. First of all, on the function-of-weight result test, I think it shows that it is a different way and that it produces a different result. Well, if that were the only testimony, maybe. But there is a conflict, isn't there, Your Honor, on the function-of-weight result? I'd like to address that, Your Honor. After I deposed Mr. Davis, who was also their expert at Fayette and Crawford, after I deposed him, he gave that testimony that you see in the brief. We filed a motion for summary judgment, and then we filed an affidavit in which he said, contrary to his deposition testimony, that a hot-melt adhesive in welding can't be considered limiting the same thing, obviously contradicting what he said in his deposition. But the law says a party cannot do that, both in the Fourth Circuit, where this case comes from, as well as in other jurisdictions. The district court didn't rely on that. That is correct, Your Honor. But that is why that does not create a question of fact. It cannot be relied on, and it is supposed to be disregarded as a matter of law. So you have the inventor's own testimony saying that his method is superior, not equal. He didn't choose it because he already had the equipment. He chose it because it is superior. In his opinion, it is a superior method for quite a few reasons. And our expert says our method is superior for quite a few reasons. But one thing that both of the experts agree on is that these are not substantially equal. So, yes, we are asserting the function-of-weight result test. And we're also asserting the disavowal principle that was enunciated most recently in the AstraZeneca case. In the AstraZeneca case, this court said, where the general summary or description of the invention describes a feature of the invention and criticizes other products that lack that feature, this operates as a clear disavowal. Now, in this case, let's go back to what the specification said. The specification refers to what it calls effective and secure attachment. Obviously, durability is a big part of the criteria. By ultrasonic or heat well along the entire length. Now, part of the plastic strategy here is to focus almost exclusively on the continuity of the attachment and try to push the well limitation in the background. But the all-outness rule says that they can't do that. They've deliberately chosen to include the well limitation. They can't run away from it. And the specification didn't just mention along the entire length when it was criticized in the prior art. It also mentioned ultrasonic or heat well length. So, when it criticizes the attachment when it's used in other prior art gunnery, why doesn't that include a disavowal of the adhesive cited in Cosby, where Cosby also said that another attachment Why is that not a disavowal? That can be read as referring to the continuous nature of the attachment in this pattern and the spot attachment in the prior art. It could be read that way, but let me put it this way. If that was what they had meant to say, and if that was what they wanted people to interpret it as, they should have left out the words ultrasonic or heat well in the specification. Who has the last clear chance to draft a clear pattern? It's the patentee. The patentee is the master or mistress or his or her claimant. And that is the person who has the last clear chance to draft a clear one. Now, if they had simply meant that they wanted to attach continuously, which they now say is the novel form of the pattern, why didn't they use a broad generic word like attach or join or unite, which is the word they now use, or bind? There are quite a few words that are broad words for this attachment principle, and they could have written claims that simply said that the mesh screen and the guard panel are to be attached continuously and left it at that. But instead they included another element, which was the well limitation, which they also publicized in the specification. And if you actually compare the specification with what the inventor testified to in his deposition, the specification clearly reflects his conclusions about the superiority of well. So at the district court oral argument, I posed the logical question that presents itself here. Why didn't they just say attach and then done with? And the opposing counsel, my then opposing counsel, answered the question as follows. Because in the presence of the doctrine of equivalence, we didn't have to. Now, I've seen the purpose of the doctrine articulated in various ways over the years, but I've never seen it so. The purpose of the doctrine of equivalence is to enable people to draft abbreviated claims. The doctrine of equivalence is not a method of short hearing. And just as in the sage case, and just as in the fragrant seeding case, and as you've already acknowledged, the subject matter of this patent involves relatively simple and well-known technology. This isn't a foreseeability case. This goes well beyond foreseeability because we know indisputably that the inventor actually knew about the particular technique that he now says we use as infringement. And he rejected it. But you're coming real close to making an invalidity argument, which I confess I was doing just a minute ago when I was trying to push the limits of Mr. Jakes' argument. Invalidity isn't before us. It's not, Your Honor, and I agree with that. To what extent, in the context of weighing the doctrine of equivalence, can we take into consideration that it may lap into prior art and cause an invalidity problem? How? What's our latitude to do that here on appeal? Your Honor, the issue on appeal is whether a summary judgment of non-infringement is properly breaked. So if you're asking the question in that context, what I would say is let's look at the Sage case and let's look at the Amsterdam case and let's look at the Freedman-Seaton case, which all articulate the principle that if the inventor knew about it, we are going to expect the inventor to claim it because the inventor is the master of the claim language. In Festo, the Supreme Court said, and I think this may have been what you referred to a moment ago in referring to what the Supreme Court said about the doctrine, the patentee, as the author of the claim language, may be expected to draft claims encompassing readily known quotas. And there is similar language in Sage and there is similar language in Freedman-Seaton as well as in Amsterdam. If they knew about it, they shouldn't have claimed it. And if they criticized it, they shouldn't now say, oh, by the way, that's infringement. They could have said patch. They could have said adhesive. They knew about it, but they did not claim it. And we ask that the summary judgment be affirmed. Thank you. Thank you, Mr. Hager. Mr. Jakes. If I could just address the inventor's testimony briefly. The fact that the inventor said that gluing and heat welding were different is not the question here. It's whether or not they're equivalent. Of course they're different. Or we would have a literal infringement depending on how the claim is interpreted. So that's not the question. There is a disputed fact issue. You came back to, I think it was footnote eight in the Supreme Court's Warner-Jankinson opinion. They rather encouraged us to use summary judgment, even in the context of the doctrine of equivalence. Why wouldn't this case be precisely the same kind of case? They're urging us to use summary judgment for. I believe that summary judgment is appropriate, and the Court has granted summary judgment in many appropriate cases where there is a legal limit to the doctrine of equivalence. And the plaintiff is trying to extend beyond that. This is right on the margin of several. The dedication rule, the prior art rule, the function-way-result rule itself, all of those come into play. And why wouldn't we, even though there might technically be at the margin of a factual issue, why wouldn't we take the Supreme Court's encouragement to use summary judgment in this context? Well, Your Honor, while that may be tempting, as you say, it is at the margin. And our argument is that we're inside the margin, and that you can't do that if there is a dispute of fact issue on the factual question of equivalency. And I believe there clearly is, based on Mr. Davis's affidavit and understanding the context of the testimony, which was not that these two things were not equivalent. Each of those legal limits, disavowal, dedication, the prior art, they're not present here. In fact, the district court didn't rely on those. The district court relied on the two. I'm not so sure they're not present. I mean, I understand that there is an argument that they may not be present. But the overbearing weight of Cosby puts you in a very difficult position, doesn't it? I don't think so, because Cosby does not disclose the continuous attachments. It's a continuous well, or whether it's not even one of skill in the art. It does not. Is Pace referenced in that? Is Pace referenced? Yeah. I don't believe so, no. And in fact, Cosby's not referenced in the patent, either. He was cited during the prosecution. But there's no. I think it is in the first page in there. In the discussion of the prior art, or column one on line 25, where it specifically says the attachment means used in other prior art literature, there's nothing that's cited there. No, but under the references. References isn't it? Yeah. Cosby's cited as one of the US patent documents. Oh, yes. It was cited during prosecution. It's not in the specification. Oh, in the specification. In the specification. Under the other patents it's cited. Yes. Yes. I'm sorry. I misunderstood your question. But it's not discussed in the specification as the prior art attachment technique that's been established. Any more questions? Thank you. Thank you very much. Thank you, Mr. Jacobson. Thank you, Mr. Redding. In case you still have questions.